UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| GARY A. ALLAIN | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | NO. 1:08-CV-214 |
| | ) | COLLIER/CARTER |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security | ) | |
|     Defendant | ) | |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings (Doc. 11) and defendant's Motion for Summary Judgment (Doc. 16).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 35 years old at the time of the ALJ's decision (Tr. 28). He received an associate's degree through a technical college (Tr. 54), and has past relevant work as an Army soldier, stock clerk, tire changer, department manager, temporary plastics laborer, trucking helper, assistant fast food manager, and convenience store clerk (Tr. 61, 133-41). Due to his

1

impairments, Plaintiff has not worked since April 16, 2002. At that time, he was hospitalized with recurrent fevers, night sweats, and enlarged lymph nodes at first considered to be caused by lymphoma, but later diagnosed as Adult Still's Disease and fibromyalgia (Tr. 201-05, 367-68, 442). Plaintiff reported around this time an onset of persistent back pain referring into the lower extremities, causing weakness, as well as chronic fatigue and depression indicated by crying spells and decreased memory (Tr. 506-07, 526).

### Claim for Benefits

Plaintiff applied for Disability Insurance Benefits (DIB) (Tr. 119-21), alleging he became disabled on April 16, 2002 (Tr. 119). After agency denials at the initial (Tr. 109-12) and reconsideration stages (Tr. 114-16), Plaintiff requested a hearing (Tr. 117). On February 1, 2006, Plaintiff, represented by counsel, appeared and testified before Administrative Law Judge (ALJ) John H. Maclean (Tr. 53–60, 62-5). David Boatner testified as a vocational expert (Tr. 60-62, 65-68). ALJ Maclean held a supplemental hearing on March 30, 2006, to take testimony from Dr. Edward Griffin, a medical expert (Tr. 76-101), and Norma Capone, a vocational expert (Tr. 101-06).

On June 12, 2006, ALJ Maclean determined Plaintiff was under a disability that began on his alleged onset date, April 16, 2002, and ceased on October 30, 2003 (Tr. 22). The ALJ determined that, after October 30, 2003, Plaintiff was not disabled because he could perform a significant number of sedentary jobs (Tr. 25-28).

Plaintiff requested Appeals Council review (Tr. 10), and submitted a legal brief in support of review (Tr. 717-25). When the Appeals Council declined review on July 7, 2008 (Tr. 6-8), ALJ Maclean's decision became the Commissioner's final decision in this matter.

2

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).

Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner

are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

Once disability is established, continued entitlement to such benefits can be reviewed. The regulations for deciding whether disability continues are set forth in paragraph (b) of 20 C.F.R. Section 416.994. There is a sequential evaluation process which is used in cessation cases. First, a claimant who at the time of his/her disability claim is engaged in substantial gainful employment is not disabled. Second, the claimant is considered disabled if his/her impairment corresponds to an impairment in the Listings of Medical Impairments. Third, the Commissioner determines whether medical improvement has occurred. Fourth, the Commissioner must determine whether or not any medical improvement is related to the ability to engage in basic work activities. Fifth, if there has been no medical improvement or it is found that the medical improvement is not related to the ability to work, the Commissioner must consider whether any of the exceptions apply. Sixth, if medical improvement is shown to be

4

related to the ability to do work or if one of the first group of exceptions to medical improvement applies, the Commissioner must decide if the claimant has a current impairment or a combination of all current impairments which are severe. Seventh, if the claimant's impairments are severe, the Commissioner must access his/her current ability to engage in substantial gainful activity. Eighth, the burden shifts to the Administration to show that there are other jobs existing in significant numbers in the national economy that claimant is able to make successful vocation adjustment considering his/her age, education, work experience and residual functional capacity. *Id.*

After considering the entire record, the ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act as of April 16, 2002, the date the claimant became disabled.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 404.1571 *et seq*.).

3. At all times relevant to this decision, the claimant has had the following severe impairments: Adult Still's Disease, irritable bowel syndrome, gastroesophageal reflux disease (GERD), obstructive sleep apnea, fibromyalgia, chronic fatigue syndrome (CFS), chronic headaches, depression, anxiety, a post-traumatic stress disorder (PTSD), and a history of a seizure disorder (20 CFR 404.1520©)).

4. From April 16, 2002 through October 30, 2003, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

5. After careful consideration of the entire record, I find that, from April 16, 2002 through October 30, 2003, the claimant lacked the residual functional capacity to perform any sustained work activity.

6. From April 16, 2002 through October 30, 2003, the claimant was unable to perform past relevant work (20 CFR 404.1565).

7. The claimant was born on August 2, 1970 and was 31 years old on the alleged

5

Case 1:08-cv-00214-CLC-WBC   Document 19   Filed 07/27/09   Page 5 of 17   PageID #: 69

disability onset date, which is defined as a younger individual 18-44 (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from April 16, 2002 through October 30, 2003 (20 CFR 404.1568).

10. From April 16, 2002 through October 30, 2003, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560©) and 404.1566).

11. The claimant was under a disability, as defined in the Social Security Act, from April 16, 2002 through October 30, 2003 (20 CFR 404.1520(g)).

12. Medical improvement occurred as of October 31, 2003, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and (f)(4)).

13. Beginning on October 31, 2003, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).

14. After careful consideration of the entire record, I find that, beginning on October 31, 2003, the claimant has had the residual functional capacity to perform unskilled sedentary work.

15. The medical improvement that has occurred is related to the ability to work (20 CFR 404.1594(b)(4)(I)).

16. Beginning on October 31, 2003, the claimant has been unable to perform past relevant work (20 CFR 404.1565).

17. Beginning on October 31, 2003, transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568).

18. Beginning on October 31, 2003, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560©) and 404.1566).

19. The claimant's disability ended on October 31, 2003 (20 CFR 404.1594(f)(8)).

(Tr. 18-28).

## Issues Raised

I. The ALJ erred in failing to consider the Veteran Administration's finding that Plaintiff was entitled to disability benefits due to unemployability.

II. The ALJ erred in finding Plaintiff's subjective complaints to be unsupported by the record, particularly given the nature of Plaintiff's fibromyalgia and chronic fatigue syndrome.

III. The ALJ erred in failing to give appropriate weight to the opinion of Dr. Stapleton, Plaintiff's treating physician.

## Relevant Facts

### Medical Evidence

On October 31, 2003, the Opioid Pain Management Team submitted a report in which Plaintiff stated his pain was global and his pain level, even with narcotic use, was an "8" on a scale of 1-10 (Tr. 368).

A progress Note dated November 18, 2003, stated he had been a "no-show" and "no call" for multiple appointments (Tr. 368). Thus, he was "D/Ce'ed (discontinued)" for these treatments. James T. Klema, B.S, K.T., a staff kinesiotherapist, stated no follow-up was recommended (Tr. 368).

A note from January 18, 2006, stated Plaintiff's arthritis, with adult onset Still's Disease was reasonably well-controlled on his present medications (Tr. 644). This report also described Plaintiff as an overweight young vet(eran), who was not in acute distress, but who was irritable and not very forthcoming (Tr. 660).

7

A note from March 17, 2006, talked about how Dr. Birchmore had found no sign of inflammatory joint disease when examining Plaintiff (Tr. 698).

As noted above, on April 2, 2006, Dr. Stapleton indicated that Plaintiff had lifting, sitting, standing/walking capabilities that were consistent with an ability to perform light work. 20 C.F.R. § 404.1567(b) (which contemplates lifting up to 20 pounds occasionally and 10 pounds more frequently, and also requires standing/walking for approximately six hours in an eight-hour day) (Tr. 714). Dr. Stapleton also opined Plaintiff would need more than one thirty-minute break and two fifteen-minute breaks throughout his workday, although he also stated it was "unknown" as to the extent of these additional breaks (Tr. 715). Dr. Stapleton replied "yes" to a "yes/no" question that asked whether Plaintiff would be absent from work on a chronic basis, and he responded "no" when asked if Plaintiff's subjective complaints seemed reasonable in view of Dr. Stapleton's observations and diagnoses (Tr. 716).

<u>Testimony of the Vocational Expert (VE):</u>

The ALJ asked Ms. Capone to consider a person of Plaintiff's age, education, and past work experience, who could perform sedentary work (Tr. 101). Ms. Capone responded this person could perform 500 local and 50,000 national sedentary, unskilled jobs as a machine tender as well as 2,000 local and 400,000 national jobs as an assembler (Tr. 102).

<u>ALJ's Decision</u>

At step one, the ALJ found that Plaintiff had not worked since his alleged onset date, April 16, 2002 (Tr. 18). At step two, the ALJ found that Plaintiff had established severe impairments, including the Adult Still's disease, CFS, and fibromyalgia, and a host of other impairments (Tr. 19). After October 30, 2003, Plaintiff did not have an impairment which met or

equaled the requirements of any impairment found in the Listings of Impairments (Tr. 19). The ALJ, however, found that from April 16, 2002, through October 30, 2003, Plaintiff lacked the residual functional capacity (RFC) to perform any sustained work activity (Tr. 19-22). The ALJ also found that medical improvement occurred as of October 31, 2003, and that the medical improvement was related to Plaintiff's ability to work (Tr. 25-26). Thus, at step five the ALJ referred to the medical-vocational guidelines ("the Grid"), in conjunction with the testimony of the vocational expert, to determine that Plaintiff was not disabled because he could perform a significant number of sedentary jobs (Tr. 27-28).

Analysis

I.

Plaintiff first asserts the ALJ erred in failing to consider the Veteran Administration's finding that Plaintiff was entitled to disability benefits due to unemployability. I agree with Plaintiff that the ALJ was incorrect when he stated the opinion of the Veterans Administration had nothing to do with his decision. The VE's opinion should be considered along with the other evidence, but I agree with the argument of the Commissioner that there really was not an inconsistency between the ALJ's ultimate conclusion and the Veterans Administration decision and therefore conclude that any error was harmless.

On October 1, 2002, the Department of Veteran's Affairs sent Plaintiff a letter that informed him that the VA had granted his claim for service-connected benefits (Tr. 126). Accompanying materials showed the VA based this grant of benefits on two examinations conducted in July 2002, and on an examination conducted in August 2002 (Tr. 127). The VA, while noting that there exists a large overlap in the symptoms of CFS and fibromyalgia, awarded

9

Plaintiff a 60% disability rating based on his CFS and a 20% rating based on his fibromyalgia (Tr. 127). The letter stated a higher evaluation of 100% was not warranted, and the letter also stated the VA could not grant a 100% award because this level of disability was not shown (Tr. 128). Finally, the letter stated that since there was a likelihood of improvement, the assigned evaluation was not considered permanent and was subject to future review examination (Tr. 127).

The ALJ found Plaintiff disabled as of the date he alleged disability in his DIB application, April 16, 2002 (Tr. 22). The ALJ determined that Plaintiff's disability continued through October 30, 2003 (Tr. 22). As such, both the VA and the Social Security Administration agreed that as of October 1, 2002, Plaintiff was entitled to benefits under their respective systems.

Plaintiff is correct when he states the ALJ did not mention the VA's finding in his decision (Plaintiff's Brief at 5). However, I conclude the findings of the ALJ and the findings of the VA are not in conflict. Both agencies agreed Plaintiff was disabled as of October 1, 2002. The finding made by the VA in October 2002 does not preclude a later finding made by an ALJ in June 2006 that, by SSA's disability regulations, Plaintiff's disability ceased as of October 31, 2003 (Tr. 28). The information the VA submitted to Plaintiff in October 2002, stated that there was a likelihood of improvement (Tr. 127). The ALJ found that the improvement the VA expected to occur actually did occur. There is therefore nothing contradictory about the ALJ's findings and the VA's findings. There is no VA finding from October 30, 2003, or after that date which contradicts the ALJ's finding of improvement. Thus, there is also no contradiction between the VA and SSA regarding Plaintiff's status between April 16, 2002 and October 30,

10

2003. There is no error here because there was nothing for the ALJ to consider, other than a finding that agreed with his finding. Even if arguably it was error to state no weight was given to the VA's finding, it was harmless under these circumstances.

II.

Next, Plaintiff argues the ALJ erred in finding his subjective complaints to be unsupported by the record, particularly given the nature of Plaintiff's fibromyalgia and chronic fatigue syndrome. In so doing, argues Plaintiff, the ALJ under-emphasizes the level of pain consistently reported by Plaintiff between 2003 and 2006 and failed to properly consider the fact that fibromyalgia and chronic fatigue syndrome cases typically lack this kind of objective, citing *Preston v. Secretary*, 854 F. 2d 815, at 817-18, 819 (6th Cir. 1988) (Doc. 12, Plaintiff's Brief at p. 7). However, as argued by the Commissioner, few specific illustrations were given to support this contention (See Doc. 17, Commissioner's memorandum p. 10). Further, as the Commissioner notes, the ALJ did not rely solely on objective findings to deny Plaintiff's claim. The ALJ relied on Plaintiff's activities, like his ability to manage his personal care, to assist in the care of his young child, to drive on a daily basis, and perform household chores as factors in finding that Plaintiff, after October 30, 2003, could perform unskilled sedentary work (Tr. 25). Moreover, the ALJ found Plaintiff's fibromyalgia may limit his ability to perform postural activities on a consistent basis (Tr. 25). Therefore, the ALJ afforded Plaintiff a sit/stand option (Tr. 25).

Another factor relied on by the ALJ was the testimony of the medical expert, who stated that the withdrawal of a steroid medication from Mr. Alain's treatment regimen in March 2003, was another indication that Plaintiff's single episode of Adult Still's Disease had passed (Tr. 25,

11

77-78). Similarly, the ALJ referred to testimony from Plaintiff himself that one of his medications for rheumatoid arthritis was discontinued in late 2004 (Tr. 26). The ALJ also relied on evidence from a DVD that showed Plaintiff as capable of walking a significant distance without gait problems and picking up his wheelchair and loading it in the car without difficulty (Tr. 26). Thus, it is clear that the ALJ, in addition to noting the absence of objective factors (Tr. 26), relied on a great deal of evidence that had nothing to do with objective findings, and even credited the effects of Plaintiff's fibromyalgia to some extent (Tr. 25-26).

### III.

Finally, Plaintiff argues the ALJ erred in failing to give appropriate weight to the opinion of Dr. Stapleton, Plaintiff's treating physician. Because of the treating relationship of Dr. Stapleton, Plaintiff argues he should have received more weight than that given by the ALJ and erred when the ALJ adopted the opinion of Dr. Edward Griffin, a medical expert who did not have the benefit of examining Plaintiff but only conducted a "paper examination" of Plaintiff's medical records.

The treating physician rule which gives greater and sometimes controlling weight to the treating physician is based on the assumption that a medical professional who has dealt with a claimant over a long period of time has a deeper insight into the claimant's condition than one who has examined a claimant but once or simply reviewed the medical evidence. *See Barker v. Shalala*, 40 F.3d 789 (6th Cir. 1994). However, the ALJ is not required to accept any medical opinion, even that of a treating physician, if that opinion is not supported by sufficient clinical findings. *See* 20 C.F.R. § 404.1527(d)(3); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by the treating

12

physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

Here the ALJ reasonably compared and contrasted the opinions of record and accepted the opinions he concluded were best supported by the record evidence. The ALJ considered Dr. Stapleton's opinion that Plaintiff could sit eight hours and stand and/or walk four to six hours in an eight-hour workday, and can frequently lift/carry up to ten pounds, and occasionally lift/carry up to 20 pounds, which was consistent with a range of light work. The ALJ pointed to the opinions of Dr. Stapleton, that Plaintiff would need more than the usual number of breaks and be absent on a chronic basis, but he also noted Dr. Stapleton assessed Plaintiff's subjective complaints to not be reasonable/consistent with his findings and diagnosis. On the basis of this seeming inconsistency, he gave the treating physician less than significant weight. (Decision of ALJ, Tr. 21-22).

As the Commissioner argues, the ALJ relied on various factors in his decision related to the weighing of the medical opinion. The ALJ relied on Plaintiff's activities, like his ability to manage his personal care, assist in the care of his young child, drive on a daily basis, and perform household chores as factors in finding that Plaintiff, after October 30, 2003, could perform unskilled sedentary work (Tr. 25). Rather than discrediting the limitations caused by fibromyalgia, as Plaintiff's brief suggests, the ALJ found that Plaintiff's fibromyalgia may limit his ability to perform postural activities on a consistent basis (Tr. 25). Therefore, the ALJ afforded Plaintiff a sit/stand option (Tr. 25).

The ALJ relied on a number of other factors: the testimony of the medical expert, who stated Plaintiff's single episode of Adult Still's Disease had passed (Tr. 25, 77-78); the testimony

13

from Plaintiff himself that one of his medications for rheumatoid arthritis was discontinued in late 2004 (Tr. 26); and the evidence from the DVD which showed Plaintiff was capable of walking a significant distance without gait problems and able to pick up his wheelchair and load it in the car without difficulty (Tr. 26). The ALJ, in addition to noting the absence of objective factors (Tr. 26), relied on evidence that had nothing to do with objective findings, and even credited the effects of Plaintiff's fibromyalgia to some extent (Tr. 25-26).

Plaintiff points to Dr. Stapleton's response to two questions on a form that consisted of twelve questions, however, there were responses to ten other questions. The form consists of three pages and of twelve questions (Tr. 714-16). When the form is viewed in the context of the record as a whole, it is clear some answers in part actually supports the ALJ's RFC determination, and also supports the ALJ's adverse credibility finding.

The initial page of Dr. Stapleton's assessment describes a person who can sit for eight hours and stand/walk for 4-6 hours in an eight-hour workday (Tr. 714). In addition, Dr. Stapleton indicated that Plaintiff could lift up to ten pounds on a frequent basis, and up to twenty pounds on an occasional basis (Tr. 714). These limitations virtually mirror the definition of light work found in the regulations. *See* 20 C.F.R. § 404.1567(b) (definition of light work which contemplates lifting up to twenty pounds occasionally, and ten pounds more frequently, as well as sitting for at least two hours and standing/walking for up to six hours in an eight-hour workday). The ALJ, as noted above, limited Plaintiff to sedentary work. 20 C.F.R. § 404.1567(a) (which contemplates no lifting of more than ten pounds and involves primarily sitting). Thus, the ALJ limited Plaintiff to a far greater extent than did Dr. Stapleton on the initial page of his assessment.

14

Dr. Stapleton opined that Plaintiff did not need to elevate either of his legs while at work, and that Plaintiff did not require bedrest during the workday (Tr. 715). Plaintiff concentrates on Dr. Stapleton's response to one question. In that response, although Dr. Stapleton opined that Plaintiff might require more than one thirty-minute and two fifteen-minute breaks throughout his workday, Dr. Stapleton was uncertain about how much additional rest was needed (Tr. 715). Dr. Stapleton then responded to the remaining questions on the second page of the form by rating Plaintiff's pain as "moderate" (Tr. 715). Dr. Stapleton also opined that this moderate pain would not cause Plaintiff to experience lapses in concentration or memory on a regular basis (Tr. 715).

The third page of this form consisted of three questions. Dr. Stapleton was unsure about whether or not Plaintiff would need any environmental limitations, and Dr. Stapleton indicated that, in his opinion, Plaintiff's subjective complaints were not reasonable given Dr. Stapleton's observations and diagnoses (Tr. 716). This discussion demonstrates Dr. Stapleton's form suggests greater capabilities than those found by the ALJ and provides the ALJ with an additional rationale for rejecting Plaintiff's subjective complaints.

Plaintiff highlights Dr. Stapleton's response to one of the three questions on the third page. That question (question # 11) asked about frequent absences and it called for a "yes" or "no" response (Tr. 716). Dr. Stapleton responded "yes" that the patient (Plaintiff) had a medical need to be absent from work on a chronic basis (Tr. 716). The question did not ask about how often Plaintiff would be absent from work. It was simply a "yes" or "no" question and Dr. Stapleton did not qualify his "yes" answer in any manner (Tr. 716). The other ten questions on this form demonstrated an ability to perform light work and raised questions about Plaintiff's credibility (Tr. 714-16).

15

As noted above, there is other evidence to support the rejection of the opinion of the treating physician: 1) the testimony of the medical expert, who stated that the withdrawal of a steroid medication from Plaintiff's treatment regimen in March 2003, was another indication that Plaintiff's single episode of Adult Still's Disease had passed (Tr. 25, 77-78); 2) the ALJ's reference to testimony from Plaintiff himself that one of his medications for rheumatoid arthritis was discontinued in late 2004 (Tr. 26); and 3) the evidence from the DVD that showed Plaintiff as capable of walking a significant distance without gait problems and picking up his wheelchair and loading it in the car without difficulty (Tr. 26). This evidence seriously impairs Plaintiff's credibility and the form filled out by Dr. Stapleton, does not, when viewed as a whole, completely support Plaintiff's claim. Some of it does but other parts appear consistent with a person able to perform gainful activity.

Dr. Griffin provided the testimony that allowed the ALJ to find Plaintiff disabled for a closed period of time. There is evidence to support the conclusion Plaintiff was disabled as a result of Adult Still's Disease, that his Still's Disease resolved, and that he has not proven that he is significantly limited due to fibromyalgia or CFS. Indeed, as noted, Dr. Stapleton found that Plaintiff could lift up to twenty pounds (Tr. 714) and that his subjective complaints were not reasonable (Tr. 716). I conclude there is substantial evidence to support the conclusion finding that Plaintiff was no longer disabled after October 31, 2003. I conclude the record as a whole provides substantial evidence to support the conclusion that there was medical improvement related to Plaintiff's ability to work and the conclusion Plaintiff is no longer disabled after October 31, 2003.

Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 16) be GRANTED, and plaintiff's Motion for Judgment on the Pleadings (Doc. 11) be DENIED.[1]

Dated: July 27, 2009                    s/William B. Mitchell Carter
                                        UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).